UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEANNA PANKEY,
on behalf of T.P.,

                        Plaintiff,

v.                                                          7:14-CV-0923
                                                            (GTS)
CAROLYN W. COLVIN, Acting Comm'r of Soc. Sec.,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN        VICTORIA M. ESPOSITO, ESQ.
NEW YORK, INC,
  Counsel for Plaintiff
17 Hodskin Street
P.O. Box 648
Canton, NY 13617

U.S. SOCIAL SECURITY ADMIN.                LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Jeanna Pankey

("Plaintiff") on behalf of her son, T.P., against the Acting Commissioner of Social Security

("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the

parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set

forth below, Defendant's motion is granted and Plaintiff's motion is denied.

# I. RELEVANT BACKGROUND

## A. Factual Background

T.P. was born on February 11, 2005. At the time of his hearing, T.P. was in the second grade. T.P.'s alleged impairments are attention deficit hyperactivity disorder ("ADHD") and possible bipolar disorder.

## B. Procedural History

On October 27, 2011, Plaintiff applied for Supplemental Security Income on T.P.'s behalf. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 3, 2013, Plaintiff and T.P. appeared before the ALJ, Jennifer Gale Smith. (T. 61-95.) The ALJ issued a written decision finding T.P. not disabled under the Social Security Act on March 22, 2013. (T. 25-46.) On July 12, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 31-43.) First, the ALJ found that T.P. was a "school-age child" pursuant to 20 C.F.R. § 416.926a(g)(2) on October 27, 2011 (the date the application for benefits was filed), and on March 22, 2013 (the date of the ALJ's decision), having been born on February 11, 2005. (T. 31.) Second, the ALJ found that T.P. had not engaged in substantial gainful activity since the date the application for benefits was filed. (*Id*.) Third, the ALJ found that T.P. suffers from ADHD and a mood disorder, which are severe impairments pursuant to 20 C.F.R. §

416.924(c).  (*Id*.)  Fourth, the ALJ found that T.P. does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings").  (*Id*.)  Fifth, the ALJ found that T.P. does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings.  (T. 32-42.)  Sixth, and finally, the ALJ concluded that T.P. has not been disabled, as defined by the Social Security Act, since October 27, 2011, the date his application was filed. (T. 43.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to properly consider the effect of medication and a structured setting on T.P.'s limitations.  (Dkt. No. 13 at 16-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to properly evaluate the credibility of her testimony.  (*Id*. at 19-20.)  Third, Plaintiff argues that the ALJ erred in failing to consider all of T.P.'s medically determinable impairments.  (*Id*. at 20.)  Fourth, Plaintiff argues that the ALJ erred in failing to find that T.P. has a marked limitation in the domain of acquiring and using information.  (*Id*. at  20-21.)  Fifth, and finally, Plaintiff argues that the ALJ erred in failing to find that T.P. has a marked limitation in the domain of interacting and relating with others.  (*Id*. at 21-24.)

### B.     Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues that the ALJ properly considered the effect of medication and a structured setting.  (Dkt. No. 14 at 4-5 [Def.'s

Mem. of Law].)  Second, Defendant argues that the ALJ performed a proper analysis of

Plaintiff's credibility.  (*Id.* at 5-6.)  Third, Defendant argues that the ALJ considered all of T.P.'s

medically determinable impairments.  (*Id.* at 6-7.)  Fourth, and finally, Defendant argues that the

ALJ correctly found that T.P.'s impairments did not functionally equal an impairment set forth in

the Listings.  (*Id.* at 7-11.)

## III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether

an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will

be reversed only if the correct legal standards were not applied, or if there determination was not

supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)

("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles,

application of the substantial evidence standard to uphold a finding of no disability creates an

unacceptable risk that a claimant will be deprived of the right to have her disability

determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d

41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d

Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for Social Security Income benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012,

at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.    Whether the ALJ Failed to Properly Consider the Effects of Medication and a Structured Setting

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court would add the following analysis.

Section 416.924a(9)(b)(i) of Title 20 of the Code of Federal Regulations requires consideration of the effects of medication on a child's limitations. Plaintiff argues that T.P.'s medication to control his ADHD symptoms is not consistently effective and therefore cannot be considered as diminishing the severity of T.P.'s impairment. (Dkt. No. 13 at 17-18 [Pl.'s Mem. of Law].) In support of this argument, Plaintiff argues that T.P. acts in a belligerent manner when his medication has worn off. (*Id.*) According to Plaintiff, even when T.P. is medicated, he has "serious" daily problems with "expressing anger appropriately, respecting and obeying adults in authority . . . and using adequate vocabulary and grammar to express thoughts and ideas in general conversation." *(Id.)*

It is apparent that the ALJ implicitly, if not explicitly, considered the effects of medication on T.P.'s behavior. Specifically, the ALJ discussed the report of Jen Smith, T.P.'s first grade teacher, noting that, when T.P.'s medication is "off," T.P. has "difficulty getting along with others, experiences agitation, and is unable to follow direction." (Tr. 33.) However, as noted by the ALJ, Ms. Smith also reported that when T.P. receives medication treatment he is "better behaved and [is able to] focus better." (*Id.*) Moreover, as noted by the ALJ, Ms. Smith reported that T.P. takes medication on a regular basis, which is supported by school records "reflecting that [T.P.] receives medication treatment at school." (*Id.*) Similarly, the ALJ also took note of the testimony of T.P.'s mother, Ms. Pankey, who testified that "with medication treatment [T.P.] is able to pay attention in class, listen to his teacher, and do schoolwork." *(Id.)* Finally, in assessing T.P.'s health and well-being, the ALJ referenced treatment records indicating that T.P. experiences symptoms "including agitation, difficulty sleeping, and hyperactivity." (Tr. 42.) However, the ALJ stated that, according to treating medical sources,

T.P.'s symptoms related to his mental impairments "are improved with medical treatment and the medical evidence of record does not otherwise reflect persistent side effects of medication treatment." (*Id.*)  Accordingly, although the ALJ did not explicitly discuss the effects of medication on T.P.'s functioning, the ALJ implicitly acknowledged that T.P.'s functioning worsens when his medication has worn off.  However, the ALJ also considered evidence indicating that T.P. is able to function normally when he is medicated.  Therefore, this Court finds that the ALJ adequately considered the effects of medication on T.P.'s behavior, which is supported by substantial evidence.

With respect to T.P.'s educational setting, Plaintiff argues that the ALJ failed to consider the effects of a structured setting in any meaningful way and T.P.'s ability to function outside of this setting  (Dkt. No. 13 at 18-19 [Pl.'s Mem. of Law].)  As Plaintiff correctly notes, the ALJ must consider how the child would function without extra help and outside of the structured setting.  20 C.F.R. § 416.924a(b)(5)(iv); *see also Smith v. Massanari*, 00-CV-0402C, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002); *Smith ex rel. J.H. v. Colvin*, 935 F. Supp.2d 496, 505 (N.D.N.Y. 2013).  However, courts have also acknowledged that the ALJ need not explicitly discuss this factor.  *See Watson ex rel. K.L.W. v. Astrue*, 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) ("While the ALJ must consider how a child would function outside of a supportive setting, the regulation does not command the ALJ to explicitly discuss his consideration of these factors in the decision."); *accord*, *Walker ex rel. J.B. v. Astrue*, 2010 WL 2287566, at *10 (N.D.N.Y. June 3, 2010); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).

Here, the ALJ discussed the effects of a structured or supportive setting when summarizing the relevant school and medical evidence in T.P.'s record. (Tr. 33.) Specifically, the ALJ discussed Ms. Smith's report, noting that T.P. required assistance in reading, writing, and organizing his thoughts, but did not require assistance with math. (*Id.*) The ALJ also noted that the only special service T.P. received was counseling once a week. (*Id.*) Significantly, T.P. attended regular education classes and Ms. Smith did not report that T.P. required special education services. (Tr. 37.) Finally, the ALJ noted that, despite T.P.'s impairments, he was still able to attain grades ranging from As to Cs in regular education classes (Tr. 33, 37.)

Moreover, the ALJ implicitly acknowledged some of the discrepancies between T.P.'s symptoms in and out of the structured school setting. For example, the ALJ considered Ms. Pankey's testimony that T.P. "gets into fights with his brother and cousins and has difficulty getting along with classmates." (Tr. 33, 39.) Furthermore, T.P. "experiences tantrums taking approximately 20 minutes to calm down." (*Id.*) However, the ALJ also discussed Ms. Pankey's written statements and testimony, noting that T.P. is able to share toys, enjoy being with other children the same age, be affectionate to parents and other children, attend friend's parties, play with Legos with friends, attend an afterschool program, play with handheld video games, use and pay attention to computer for 10 to 15 minutes, ride a bicycle, watch television and pay attention to it for approximately 15 minutes, and generally get along with his family. (Tr. 33, 39-40.)

Additionally, the ALJ discussed some of T.P.'s disruptive behavior as described in the reports of treating inpatient sources. These sources reported that T.P. exhibited hyperactivity, intrusiveness, and physical aggression during inpatient psychiatric treatment. (Tr. 39-40.) However, it was also reported that these behaviors abated with treatment and T.P. "was

otherwise able to follow instructions and participate in routine activities without a problem." (Tr. 40.) The ALJ also discussed a family planning meeting involving the claimant's counselor and second grade teacher in which it was revealed that T.P. "was able to listen to teachers without any behavioral outbursts in the second grade." (*Id*.)

In these circumstances, where the ALJ acknowledged T.P.'s school had provided him with certain accommodations, and where the ALJ further recognized some of the discrepancies in T.P.'s behavior in and out of the structured school environment, this Court concludes that the ALJ gave adequate consideration to this factor. *See Watson*, 2008 WL 3200240, at \*5 ("Although the ALJ did not explicitly address the issue of how she might function outside of structured settings, he considered all of the medical, non-medical, and educational evidence presented by the plaintiff."); *see also Johnson ex re. A.J. v. Astrue*, 11-CV-5247, 2013 WL 1187436, at \*15 (S.D.N.Y. Mar. 22, 2013) (upholding ALJ's decision where he "was indisputably aware that [the child] was in a structured setting" and implicitly compared the child's functioning inside and outside of the structured setting, even though he did not "explicitly discuss structured settings in his opinion").

### B. Whether the ALJ Erred in Failing to Properly Explain Her Determination Regarding Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 6 [Def.'s Mem. of Law].) To those reasons, the Court would add the following analysis.

Plaintiff argues that the ALJ failed to make specific findings concerning the credibility of Ms. Pankey's testimony. (Dkt. No. 13 at 19 [Pl.'s Mem. of Law].) Plaintiff argues this is problematic because Ms. Pankey's testimony allegedly corroborates the observations of T.P.'s teacher and counselor. (*Id*.)

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *See Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Id*. at 261. "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 [10th Cir. 2003]). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child was testifying." *Id*. at 152.

Furthermore, "[t]he ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 271 (N.D.N.Y. 2009).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* "The issue is not whether the clinical and objective findings are consistent with an inability

to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Hamedallah*, 876 F. Supp. 2d at 152.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject plaintiff's subjective testimony." *Id*. (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 [N.D.N.Y. 2011]). "An ALJ rejecting subjective testimony concerning pain and other symptoms 'must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 [S.D.N.Y. 1987]). "The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period." *Hamedallah*, 876 F. Supp.2d at 152 (citing *Howe-Andrews v. Astrue*, 05-CV-4539, 2007 WL 1839891, at *10 [E.D.N.Y. June 27, 2007]); *see also F.S. v. Astrue*, 10-CV-444, 2012 WL 514944, at *20 (N.D.N.Y. Feb. 15, 2012).

In this case, the ALJ determined the following:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 33.) Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vii), in assessing Ms. Pankey's credibility. Throughout the decision, the ALJ articulated the

inconsistencies upon which she relied in discrediting Ms. Pankey's testimony and in determining that T.P. is not as limited as Ms. Pankey contends. For example, the ALJ discussed Ms. Pankey's testimony regarding T.P.'s behavioral issues such as fighting with his brother, experiencing temper tantrums, and having difficulty getting along with classmates. (Tr. 33.) However, the ALJ also discussed Ms. Pankey's written statements that T.P. has been able to attend friend's parties, play Legos with friends, attend afterschool programs, and generally get along with his family. (*Id*.) In addition, the ALJ discussed the report of Ms. Smith, T.P.'s first grade teacher, which corroborated some of Ms. Pankey's testimony to the extent that T.P. had difficulty getting along with others, concentrating, being unable to follow direction, and experienced agitation. (*Id*.) However, Ms. Smith also reported that, with medication, T.P. is better behaved and is able to focus. (*Id*.) Similarly, the ALJ noted Ms. Pankey's testimony, that with medication, T.P. is able to pay attention in class, listen to his teacher, and do schoolwork. (*Id*.) The ALJ also noted several medical reports that stated T.P.'s symptoms and behavior improved with treatment. (Tr. 34) Finally, the ALJ discussed that, during a family planning meeting with T.P.'s counselor and second grade teacher, T.P. was found to be able to listen to teachers without behavioral outbursts in second grade. (Tr. 34.)

With respect to T.P.'s performance in school, Ms. Pankey testified that T.P. had difficulty with some of his subjects, which was corroborated by Ms. Smith when she reported that T.P. required assistance with certain subjects. (Tr. 33.) However, the ALJ also noted that treating medical sources believed T.P. is able to attain good grades and Ms. Pankey's testimony that T.P. is able to attain grades ranging from A's to C's in regular education classes. (Tr. 33, 37.)

While the ALJ may not have expressly stated the weight she did or did not give Ms. Pankey's testimony on various points, "the ALJ did discuss the testimony in such a way as to make it clear to a reviewer of the decision that she discredited [Ms. Pankey's] opinion." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 404 (W.D.N.Y. 2014); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability"). Accordingly, the Court finds that the ALJ's assessment of Ms. Pankey's credibility is supported by substantial evidence. The ALJ complied with the Regulations and articulated the inconsistencies upon which she relied in discrediting the testimony of disabling impairments. Because substantial evidence in the Record supports this finding, the Court will not substitute its judgment for the ALJ, who was in a better position to assess credibility. Therefore, remand on this issue is not warranted.

C.     **Whether the ALJ Failed to Consider All Medically Determinable Impairments**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 6-7 [Def.'s Mem. of Law].) To those reasons, the Court would add the following analysis.

T.P. was diagnosed with an impulse control disorder in October 2011. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) Plaintiff argues that the ALJ failed to discuss or consider T.P.'s impulse control disorder in her opinion or determine whether it is a severe impairment. (*Id*.) Plaintiff further argues that, due to this failure, the ALJ must have also neglected to consider whether this impairment was disabling in combination with others. (*Id*.) According to Plaintiff, this is a

significant omission amounting to more than a harmless error because the Record contains several discussions of T.P.'s "dangerously impulsive behavior." (*Id.*)

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). However, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the claimant's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (Stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause Step Two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, 10-CV-01688, 2012 WL 3727178, at *9 [D. Conn. May 11, 2012]).

Here, the ALJ found that T.P.'s ADHD and mood disorder constitute severe impairments. (Tr. 31.) While the ALJ did not specifically discuss T.P.'s impulse control disorder, the ALJ considered the effects of the impairment throughout her analysis. First, it should be noted that Plaintiff did not allege T.P. had an impulse control disorder. (Tr. 193.) It is the claimant's

burden to present evidence establishing severity and the "mere diagnosis of an impairment is not sufficient to establish 'severity' under step two." *Cobbins v. Comm'r*, 32 F. Supp.3d 126, 133 (N.D.N.Y. 2012). Notwithstanding that fact, the ALJ still discussed some of T.P.'s aggressive and impulsive behavior described by treating sources, such as exhibiting hyperactivity, intrusiveness, and physical aggression. (Tr. 33-34, 39.) It was also discussed that T.P. got into fights with his brother, suffered from poor impulse control, and experienced temper tantrums during therapeutic sessions and behavioral outbursts during class. (*Id*.) However, the ALJ also noted that according to T.P.'s treatment providers, these behaviors had abated with treatment. (*Id*.)

Second, in any event, because the ALJ concluded that T.P. had severe impairments and continued with the sequential analysis, any arguable inadequacy in connection with the impulse control disorder was harmless. *See Lasiege*, 2014 WL 1269380, at \*10-11; *McCartney v. Comm'r*, 07-CV-1572, 2009 WL 1323578, at \*16 (W.D.Pa. May 8, 2009) ("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

Third, and finally, the fact that the ALJ did not discuss this disorder explicitly does not, without more, provide a basis for remand. *See Cobbins*, 32 F. Supp. 3d at 133 (citing *Barringer v. Comm'r*, 358 F. Supp. 2d 67, 78-79 [N.D.N.Y. 2005] [noting that an ALJ's failure to cite specific evidence does not mean it was not considered]).

**D.** **Whether the ALJ's Conclusion that T.P.'s Impairment Did Not Meet or Functionally Equal a Listing is Supported By Substantial Evidence**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 7-11 [Def.'s Mem. of Law].) To those reasons, the Court would add the following analysis.

As discussed above, the ALJ found that T.P. does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (Tr. 32-42.) Functional equivalence of a Listing is found where there is a finding of an extreme limitation in one domain of functioning or a finding of a marked limitation in two domains. *See* 20 C.F.R. § 926a(a). In the present case, Plaintiff argues that T.P. has a marked limitation in the following two domains: (1) acquiring and using information; and (2) interacting and relating to others. The Court will examine the evidence with respect to T.P.'s functioning in both of these domains in turn.

**1.** **Acquiring and Using Information**

The ALJ concluded that T.P. has less than a marked limitation with respect to this domain. (Tr. 37.) In arriving at this decision, the ALJ considered, *inter alia*, the report of Ms. Smith, T.P.'s first grade teacher. Ms. Smith reported that T.P.'s reading, math, and written language were below grade level and he required assistance in reading, writing and organizing his thoughts. (*Id*.) However, according to the ALJ, Ms. Smith also reported that T.P. "does not require assistance with math and that his actual grade level was commensurate with his current grade level." (*Id*.) The ALJ also noted that T.P. attended regular education classes and did not require special education services. (*Id*.) Finally, treating medical sources noted that T.P. is able

18

to attain good grades with treatment and Ms. Pankey testified that T.P. has received grades ranging from As to Cs. (*Id.*)

Conversely, Plaintiff argues that the ALJ mis-read the teacher questionnaire regarding T.P.'s actual grade level being commensurate with his current grade level. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) Instead, Plaintiff argues that the questionnaire clearly states T.P. is working below grade level and points to a number of areas in which Ms. Smith indicated that T.P. has "obvious" to "very serious" problems in the domain of acquiring and using information. (*Id.*) Moreover, Plaintiff argues that T.P. was able to achieve these levels only with numerous supports in place and it may be inferred that his performance would have been worse without extra help. (*Id.*)

In assessing a school-age child's functioning in the domain of acquiring and using information, the ALJ considers how well the child learns information, and how well he uses the information he has learned. The regulations provide that a school-age child "should be able to learn to read, write, and do math, and discuss history and science" and "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his or her] own ideas, and by understanding and responding to the opinions of others." 20 CFR § 416.926a (g)(2)(iv). Some examples of limited functioning in this domain are where the child does the following:

> (i) [does] not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night[;]
> (ii) []cannot rhyme words or the sounds in words[;]
> (iii) [has] difficulty recalling important things [] learned in school yesterday[;]
> (iv) [has] difficulty solving mathematics questions or computing arithmetic answers [;]
> (v) talk[s] only in short, simple sentences and ha[s] difficulty explaining what [he or she] mean[s].

20 C.F.R. § 416.926a(g)(3).

Upon review of the teacher questionnaire, it is apparent that Ms. Smith indicated that T.P.'s class work achievement, homework achievement, and current class average were all "below level." (Tr. 211.) Ms. Smith also reported that T.P. has a "serious problem" with applying problem-solving skills in class discussions and a "very serious problem" with expressing ideas in written form. (Tr. 213.) Furthermore, Ms. Smith indicated that T.P. has an "obvious problem" in the following areas: comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, and providing organized oral explanations and adequate descriptions. (*Id.*) However, T.P. has "no problem" in the areas of "comprehending and doing math problems" and "understanding and participating in class discussions." Finally, T.P. has only a "slight problem" with "learning new material" and "recalling and applying previously learned material." (*Id.*) The questionnaire also indicates that T.P. receives special education services in the form of counseling once per week. (Tr. 212.)

This Court recognizes that teachers are "valuable sources of evidence for assessing impairment severity and functioning," *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 423 (N.D.N.Y. 2012), and a teacher's report should be "afforded significant weight" when the reporting teacher has had an extended opportunity to observe a claimant's functioning. *Titus ex rel. N.M.C. v. Colvin*, 12-CV-1056, 2014 WL 897038, at *9 (N.D.N.Y. Mar. 6, 2014); *Stanley v. Comm'r*, 32 F. Supp. 3d 382, 393 (N.D.N.Y. 2014). However, a teacher's report is not dispositive, in and of itself, of the inquiry regarding a claimant's functioning.

Here, the ALJ adequately considered Ms. Smith's report, noting that T.P. had difficulties in certain subjects and required assistance. (Tr. 33, 37.) The ALJ appears to have weighed these considerations against other areas of Ms. Smith's report, in which she indicated that T.P. did not

require assistance in math, was not in need of special education services, and attended regular education classes. (*Id.*) Finally, as discussed, the ALJ considered evidence beyond Ms. Smith's report, finding that the report was not entirely consistent with other record evidence. (Tr. 36.) This evidence includes (1) the fact that T.P. has attained grades ranging from As to Cs in regular education classes, outpatient treatment records reflecting behavior improvement at home and at school with treatment, and (2) a report by the consultative examiner in which he estimated that T.P.'s intellectual functioning is in the average range. (Tr. 33, 36-37, 277.)

Plaintiff's argument that T.P. was able to achieve only the levels indicated in Ms. Smith's report with various support measures is unpersuasive. Although Ms. Smith noted that T.P. "needs to take breaks," requires "constant reminders to keep going," and "needs to organize his thoughts with an adult," Ms. Smith did not report that T.P. needed special education services beyond the counseling T.P. receives once per week. (Tr. 212-15.) Moreover, while T.P. attended classes with a 13:2 student-teacher ratio, this appears to be the product of attending a small private school rather than having been placed in a special classroom. (Tr. 212, 69-70.) As noted above, T.P. has been able to attain grades ranging from As to Cs in regular education classrooms. (Tr. 37.)

Accordingly, the Court finds that the ALJ's conclusion as to this domain is supported by substantial evidence.

## 2. Interacting and Relating with Others

The ALJ concluded that T.P. has less than a marked limitation with respect to this domain. (Tr. 39.) In arriving at this decision, the ALJ considered Ms. Pankey's testimony that T.P. gets into fights with his brother and cousins and has difficulty getting along with classmates.

(*Id*.)  The ALJ also noted Ms. Pankey's complaints in outpatient treatment records that T.P. experiences agitation and intermittent tantrums, and has difficulty losing when playing games. (*Id*.)  The ALJ discussed records from inpatient treating sources, which indicated that T.P. exhibited hyperactivity, intrusiveness, and physical aggression during inpatient psychiatric treatment. (Tr. 39-40.)  However, according to the ALJ, these sources also reported that T.P.'s physical aggression abated with treatment and that T.P. was otherwise able to follow instructions and participate in routine activities without a problem.  (Tr. 40.)  In further support of her decision, the ALJ discussed the report of T.P.'s counselor, Ms. Garcia-Martin, M. Ed., CAS, who noted that T.P. exhibited only one temper tantrum during his therapeutic sessions. (*Id*.) Similarly, outpatient treatment records reflected decreased aggressive behaviors, frustration, and improved behavior at home and at school with treatment. (*Id*.)

Finally, the ALJ discussed a family planning meeting, which revealed that T.P. was doing well with his behavior, has been compliant at school, and has been able to listen to teachers without any behavioral outbursts in second grade.  (Tr. 40, 353.) The ALJ then considered the written statements and testimony of Ms. Pankey, indicating that T.P. is able to share toys, enjoy being with other children the same age, be affectionate to parents and other children, attend friend's parties, play with Legos with friends, attend an afterschool program, and generally get along with his family.  (Tr. 40, 180.)

Plaintiff argues that the ALJ failed to give appropriate weight to Ms. Smith's opinion regarding T.P.'s functioning in this domain.  (Dkt. No. 13 at 21-22 [Pl.'s Mem. of Law].) Specifically, Plaintiff cites Ms. Smith's questionnaire, which indicates that T.P. had "serious" problems on a "daily" basis in expressing anger appropriately, respecting and obeying adults in

authority, and interpreting nonverbal cues. (*Id*. at 21.) Plaintiff also noted other areas of Ms. Smith's report, including T.P. having "serious" problems on an "hourly" basis with using adequate vocabulary and grammar to express thoughts and ideas in general conversation, and "obvious" problems on a "daily" basis seeking attention appropriately, relating experiences and telling stories, using appropriate language, and taking turns in conversation. (Tr. 215.) Plaintiff further argues that Ms. Smith's report is consistent with those of Ms. Garcia-Martin, who found that T.P. had "extreme" limitations in interacting and relating with others. (Tr. 369.)

With respect to the ALJ's reliance on the report of consultative examiner, Dr. Dennis Noia, Ph.D., Plaintiff argues that this was a one-time examination that took place nearly a year prior to T.P.'s hearing. (Dkt. No. 13 at 23 [Pl.'s Mem. of Law].) Plaintiff also cites portions of Dr. Noia's report where it was found that the results of the examination were "consistent with allegations" that T.P. could only maintain "moderately adequate social behavior" and was capable of interacting "moderately well" with peers and adults. (*Id*.) Plaintiff argues that similar findings by consultative examiners have been held to show limitation in this domain. (*Id*.)

Finally, Plaintiff appears to argue that the ALJ was incorrect in her interpretation of the medical evidence that T.P. was consistently improving. (*Id*.) Instead, Plaintiff asserts that T.P. made sporadic progress, which is supported by the notes in the report of Ms. Garcia-Martin and the notes of Dr. Imelda Abear, M.D., a pediatrician who treated T.P. (*Id*.)

In assessing a school-age child's functioning in the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of

others." 20 C.F.R. § 416.926a(i).  According to the Regulation, school-age children should be able to develop lasting friendships with their peers.  They should begin to understand how to work in groups to create projects and solve problems.  School-age children should have an increasing ability to understand another person's point of view and tolerate differences.  The child should be able to talk to people of all ages, share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.  20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limitation of functioning in this domain are the following: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. § 416.926a(i)(3).

The Court finds that the ALJ's decision is supported by substantial evidence.  First, as discussed previously, the ALJ adequately considered Ms. Smith's report and determined that it was not fully in accord with the medical evidence in the Record. (Tr. 36.)  Furthermore, despite the obvious and serious problems that were noted by Ms. Smith in this domain, Ms. Smith indicated that T.P. had "no problem" playing cooperatively with other children and only a "slight problem" with making and keeping friends and following rules (classroom, games, sports).  (Tr. 215.) As noted above, these factors are relevant to the determination of functioning.

Second, there was sufficient evidence to support the ALJ's determination that T.P.'s aggressive behavior and frustration improved with treatment.  This evidence derives from Dr. Abear's treatment notes, which were described previously, as well as Ms. Smith's report that T.P. is better behaved and focused when on medication.  (Tr. 218, 306.)  Moreover, T.P.'s

improved behavior was corroborated by Ms. Pankey, who stated that with medication, T.P. is able to pay attention in class, listen to his teacher, and do schoolwork. (Tr. 33.)

Third, the ALJ was entitled to accord Ms. Garcia-Martin's opinion little weight due to inconsistencies in her own notes as well as the fact that her opinion was at odds with the medical evidence of record and evidence submitted by Ms. Pankey. (Tr. 33, 35-36, 322, 327-29, 333, 337-38, 353, 364.) As discussed above, Ms. Garcia-Martin reported that T.P. had extreme limitations in interacting and relating with others. However, the ALJ found this to be inconsistent with the opinion of Dr. Noia, who opined that T.P. seemed capable of "adequately maintaining moderately appropriate social behavior" and "interacting moderately well with peers and adults." (Tr. 277.) Similarly, Dr. Abear opined that T.P. had no marked impairment of age-appropriate social functioning. (Tr. 316.) In addition, the ALJ discussed the written statements and testimony of Ms. Pankey, who reported that T.P. is able to share toys, enjoy being with other children the same age, be affectionate to parents and other children, attend friend's parties, play with Legos with friends, and generally get along with his family. (Tr. 33, 40, 180.)

While the Court might draw a different interpretation from the evidence than the ALJ does, the ALJ's interpretation is certainly rationale and supported by substantial evidence. *See Rosado*, 805 F. Supp. at 153 (Stating that if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: July 1, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge